992 A.2d 829 (2010)
413 N.J. Super. 82
Frederick VOSS, Plaintiff-Respondent,
v.
Kristoffe J. TRANQUILINO, Jaime A. Tranquilino, Defendants, and
Tiffany's Restaurant, Defendant-Appellant.
No. A-5431-08T1
Superior Court of New Jersey, Appellate Division.
Argued December 14, 2009.
Decided April 28, 2010.
*830 Richard S. Ranieri, Murray Hill, argued the cause for appellant (Weber Gallagher Simpson Stapleton Fires & Newby LLP, attorneys; Mr. Ranieri and H. Benjamin Sharlin, on the briefs).
William A. Wenzel argued the cause for respondent.
Before Judges LISA, BAXTER and ALVAREZ.
The opinion of the court was delivered by
LISA, P.J.A.D.
N.J.S.A. 39:6A-4.5(b) provides that a driver of a motor vehicle who is convicted of or pleads guilty to driving while intoxicated (DWI), N.J.S.A. 39:4-50(a), in connection with an accident "shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of the accident." The issue in this appeal is whether this statutory provision bars a dram shop claim by an intoxicated motorist against a liquor licensee that allegedly served him alcoholic beverages when he was visibly intoxicated prior to the motor vehicle accident.
*831 Although a literal reading of the statute suggests that all claims are barred, we reach a contrary conclusion. We hold that N.J.S.A. 39:6A-4.5(b) does not bar a dram shop claim because (1) the purpose of the statute is to reduce automobile insurance premiums and its scope should be limited accordingly to losses that are subject to coverage under Title 39; (2) an interpretation barring dram shop claims would unjustifiably constitute repeal by implication of a portion of the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act, N.J.S.A. 2A:22A-1 to -7, commonly referred to as the "Dram Shop Act"; and (3) immunizing liquor licensees from liability in such circumstances would be inimical to the policy of this State of curbing drunk driving. We therefore affirm the trial court's order denying the liquor licensee's motion to dismiss the complaint based on N.J.S.A. 39:6A-4.5(b).
The relevant facts are undisputed. On November 9, 2006, plaintiff was injured when the motorcycle he was operating in Toms River Township collided with a vehicle operated by Kristoffe Tranquilino and owned by Jaime Tranquilino. Plaintiff alleged that prior to the accident he was a patron at Tiffany's Restaurant, the holder of a liquor license, and that Tiffany's negligently served him alcoholic beverages, which substantially contributed to the happening of the accident and was a proximate cause of his injuries. A blood test of plaintiff taken after the accident revealed a blood alcohol concentration of .196 percent, nearly two and one-half times the legal limit of .08 percent. See N.J.S.A. 39:4-50(a). Plaintiff was charged with DWI[1] to which he pled guilty.[2]
Plaintiff sued the Tranquilinos and Tiffany's. Defendants promptly moved pursuant to Rule 4:6-2(e) to dismiss for failure to state a claim upon which relief could be granted, asserting that because of plaintiff's guilty plea to DWI, his claim was barred by N.J.S.A. 39:6A-4.5(b). Plaintiff did not oppose the Tranquilinos' motion, which the trial court granted and which is not a subject of this appeal. Plaintiff opposed the motion filed by Tiffany's. The trial court denied the motion. Relying on Camp v. Lummino, 352 N.J.Super. 414, 800 A.2d 234 (App.Div. 2002), the court found that the Legislature's purpose in enacting N.J.S.A. 39:6A-4.5(b) was to contain the cost of automobile insurance premiums and, in light of that purpose and the contrary provisions of the Dram Shop Act, which would be "eviscerate[d]" if the statute barred such claims against liquor licensees, the statute did not bar plaintiff's claim against Tiffany's. Tiffany's moved for leave to appeal. We denied the motion but the Supreme Court granted it and remanded the matter to this court for disposition on the merits.
The trial court's finding that N.J.S.A. 39:6A-4.5(b) does not bar plaintiff's dram shop claim was a legal conclusion, which we review de novo. Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
In Camp, we considered whether N.J.S.A. 39:6A-4.5(b) precluded social host *832 liability in a claim by an underage plaintiff who was injured in a single vehicle accident after leaving the defendant's home and who pled guilty to DWI in connection with the accident. Camp, supra, 352 N.J.Super. at 416, 800 A.2d 234. We explained that the legislative history underlying the statutory provision and the fact that the provision was part of "An Act Concerning Automobile Insurance and Revising Various Parts of the Statutory Law," amending chapter 6A of Title 39 dealing with "Compulsory Automobile Liability Insurance" and "no fault" coverage, provided a clear indication that the purpose of the provision was to reduce the cost of automobile insurance. Id. at 417, 800 A.2d 234.
We therefore concluded that the provision could not be understood to preclude social host liability as to an underage plaintiff and we "decline[d] to enlarge the scope of N.J.S.A. 39:6A-4.5(b) beyond the object of the bill as expressed in its title or the subject matter covered by the specific section of Title 39 it expressly amend[ed]." Id. at 418, 800 A.2d 234. We observed that nothing in the legislative history suggested "that N.J.S.A. 39:6A-4.5(b) affects actions unrelated to those involving coverage under N.J.S.A. 39:6A." Id. at 419, 800 A.2d 234. Therefore, the plaintiff's common law social host claim was not barred because it did not implicate motor vehicle coverage or a cause of action subject to coverage under Title 39. Ibid.
That analysis and conclusion apply with even greater force to a dram shop claim, which, unlike the common law claim in Camp, is governed by statute. The Dram Shop Act was enacted in 1987, L. 1987, c. 152, §§ 1-7, ten years prior to the 1997 enactment of N.J.S.A. 39:6A-4.5(b). L. 1997, c. 151, § 13. To construe N.J.S.A. 39:6A-4.5(b) to bar plaintiff's dram shop claim would require a determination that in enacting that provision the Legislature repealed by implication significant portions of the previously enacted Dram Shop Act. We find no basis for such a determination.
The Dram Shop Act provides the exclusive civil remedy for injuries resulting from the negligent service of alcoholic beverages by a liquor licensee. N.J.S.A. 2A:22A-4. "Negligence" in this context with respect to an adult patron occurs "only when the server served a visibly intoxicated person," N.J.S.A. 2A:22A-5(b), i.e. a person in "a state of intoxication accompanied by a perceptible act or series of acts which present clear signs of intoxication." N.J.S.A. 2A:22A-3.
In its statement of legislative findings and declarations, the Legislature acknowledged the need to enact measures to make liability insurance coverage for liquor licensees more available and more affordable. N.J.S.A. 2A:22A-2. The Legislature further found and declared:
This lack of insurance adversely affects not only the licensed alcoholic beverage servers themselves, but also patrons and third persons who suffer personal injury and property damage as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server.

In order to make it economically feasible for insurance companies to provide coverage, the incidence of liability should be more predictable. That predictability may be achieved by defining the limits of the civil liability of licensed alcoholic beverage servers in order to encourage the development and implementation of risk reduction techniques.

This act has been designed to protect the rights of persons who suffer loss as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server while at the same time providing a balanced and reasonable *833 procedure for allocating responsibility for such losses. It is anticipated that this act may result in the improvement of the alcoholic beverage liability insurance market in this State.
[Ibid. (emphasis added).]
The balanced and reasonable procedure for allocating losses is provided for in N.J.S.A. 2A:22A-6, which limits a liquor licensee's responsibility for damages to its percentage of negligence.
Consistent with these purposes, the Dram Shop Act prescribes as the available civil remedy that "[a] person who sustains personal injury or property damage as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server may recover damages from a licensed alcoholic beverage server only if" the server was negligent (i.e. served a visibly intoxicated person, as relevant here), the injury was proximately caused by the negligent service of alcoholic beverages, and the injury was a foreseeable consequence of the negligent service. N.J.S.A. 2A:22A-5(a) (emphasis added). Based on the legislative findings and declarations, a "person" for whom this remedy is made available includes "patrons" of the liquor establishment. N.J.S.A. 2A:22A-2. It is therefore beyond question that the Dram Shop Act conferred on plaintiff a cause of action against Tiffany's.
Tiffany's argues that the plain language of N.J.S.A. 39:6A-4.5(b), providing that a driver who pleads guilty to or is convicted of DWI in connection with an accident "shall have no cause of action" (emphasis added) for his or her injuries means what it says and bars plaintiff's dram shop claim. It contends that this later enactment does not conflict with the Dram Shop Act because it leaves intact claims by third parties injured by drunk drivers who had been served at a liquor establishment and also claims by patrons injured in some manner other than in connection with a DWI accident. We find these arguments unpersuasive.
The legislative history of the Dram Shop Act makes clear that the Legislature and the Governor were keenly aware that most dram shop claims arise from drunk driving accidents. The bill that was originally passed and sent to the Governor contained these provisions in § 5, which has now been codified as N.J.S.A. 2A:22A-5:
c. A person who becomes intoxicated and sustains personal injury or property damage as a result of his actions while intoxicated shall be prohibited from instituting a civil action for damages against a licensed alcoholic beverage server.
d. A person who rides in a motor vehicle which he knows is operated by an intoxicated person and who sustains personal injury or property damage as a result of a motor vehicle accident shall be prohibited from instituting a civil action for damages against a licensed alcoholic beverage server.
[Assembly Committee Substitute For Assembly Nos. 2264, 2209, 2211, 1876, 1679, 864 and 554, at 3 (May 8, 1986).]
These provisions would have immunized liquor establishments from all claims by intoxicated persons who were negligently served, and by passengers in vehicles driven by someone known by the passenger to be intoxicated. A committee statement to the bill acknowledged that the high cost or unavailability of liquor liability insurance was caused by DWI accidents. See Assembly Insurance Committee, Statement to Assembly Committee Substitute For Assembly Nos. 2264, 2209, 2211, 1876, 1679, 864 and 554 at 2 (May 29, 1986), ("In part this is due to an increasing frequency and severity of insurance claims; licensed alcoholic beverage servers are often named in *834 personal injury suits which are filed in connection with automobile accidents involving drunken driving.") (emphasis added).
Governor Kean deemed these provisions unacceptable. In his conditional veto message, he recommended their deletion. He stated:
By eliminating licensed alcoholic beverage server liability to the adult patron and the adult who rides in a motor vehicle knowing that the motor vehicle is operated by an intoxicated adult, this bill contravenes current Alcoholic Beverage Control policy and a logical and consistent system of laws. I cannot support legislation that eliminates the licensee's civil duty of care to visibly intoxicated adults and third parties who ride in motor vehicles with an intoxicated driver. I believe there are more reasonable tort reform measures that are much less harsh to injured victims of negligence.
[Governor's Conditional Veto Message to Assembly Nos. 2264, 2209, 2211, 1876, 1679, 864 and 554, at 1-2 (Jan. 22, 1987).]
The Legislature concurred in the Governor's conditional veto and deleted the quoted provisions. In its final form, the legislation contained the measures designed to limit the liability of liquor establishments, thus advancing the purpose of making liquor liability insurance more available and affordable. This was accomplished through a long legislative process in which the Legislature considered, but ultimately rejected, the immunity Tiffany's now urges us to find. This determination was made with the knowledge that most dram shop claims involve drunk driving accidents, resulting in claims like the one in this case by the patron who alleges he was served while visibly intoxicated, which proximately caused his injuries. See also Showalter v. Barilari, Inc., 312 N.J.Super. 494, 504, 712 A.2d 244 (App.Div.1998) (noting that "dram-shop liability has arisen most often in the context of drunken driving").
We conclude that dram shop claims by drunk drivers are not only encompassed by the plain terms of the Dram Shop Act, but that such claims were deliberately incorporated into the Dram Shop Act as part of the interrelated provisions to achieve fairness while at the same time making liquor liability insurance more available and affordable. The proposed immunity provisions were stricken before final passage because they were deemed too onerous to victims of negligence and they would have resulted in an unwarranted windfall to liquor establishments. Their presence in the statutory scheme would have created a disincentive to those establishments to refrain from serving visibly intoxicated patrons and would have improperly skewed the effects of the scheme among the interested parties. The absence of such immunity is therefore a critical pillar in the Dram Shop framework.
We must now decide whether in enacting N.J.S.A. 39:6A-4.5(b) the Legislature intended to repeal the Dram Shop's absence of immunity for liquor establishments from dram shop claims by patrons injured in accidents in connection with which they pled guilty to DWI. Stated differently, did the Legislature in 1997 intend to reinsert into the Dram Shop Act the provision it considered but then deleted in 1987 with respect to such claimants? The Legislature did not expressly do so. Thus, the question becomes whether it did so by implication.
There is a general aversion to repeals by implication, which "require[] clear and compelling evidence of the legislative intent, and such intent must be free from reasonable doubt." Twp. of Mahwah *835 v. Bergen County Bd. of Taxation, 98 N.J. 268, 280, 486 A.2d 818, cert. denied, sub nom. Borough of Demarest v. Twp. of Mahwah, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). There is a strong presumption against implied repealers and every reasonable construction should be applied to avoid them. Id. at 281, 486 A.2d 818.
We cannot find a basis to overcome the presumption here. As we explained in Camp, the history of the legislation of which N.J.S.A. 39:6A-4.5(b) was a part establishes that its purpose was to bring down automobile insurance premiums. In addition to those portions of the legislative history cited in Camp, our review of the complete record of the testimony and appendices of the public hearing on the bill further confirms that this was the purpose, and nowhere in the hearing process was any mention made that the bill under consideration was meant to affect dram shop claims. Public Hearing Before The Senate Commerce Committee relating to "Automobile insurance, including the Governor's automobile insurance plan, uninsured motorists, automobile insurance fraud, and other recommendations on improving insurance in New Jersey" (May 12, 1997). Nor was there any suggestion that the bill's purpose included reducing liquor liability insurance premiums (a result that surely would have followed if dram shop claims by drunk drivers were eliminated).
The primary purpose of the Dram Shop Act, on the other hand, was to reduce liquor liability insurance premiums. It did so by incorporating various interrelated provisions. The immunity that would result from an implied repealer through the later enactment of N.J.S.A. 39:6A-4.5(b) was a provision considered but expressly rejected in shaping the Dram Shop Act. And, because drunk driving accidents provide the most frequent source of dram shop claims, the immunity Tiffany's seeks in this case would effectively reinsert into the Dram Shop Act a major component that the Legislature and Governor expressly deemed objectionable.
The purposes of the two laws differed and will remain unaffected without repeal by implication. We find no evidence of legislative intent in the enactment of N.J.S.A. 39:6A-4.5(b) to undo a major aspect of the Dram Shop Act. The construction of N.J.S.A. 39:6A-4.5(b) expressed in Camp in the context of a social host claim by a minor, namely that the statute "only implicates cases involving injuries or losses which are subject to coverage under Title 39," Camp, supra, 352 N.J.Super. at 417, 800 A.2d 234, is also a reasonable construction in the context of an adult pursuing a dram shop claim. See also Walcott v. Allstate N.J. Ins. Co., 376 N.J.Super. 384, 392, 870 A.2d 691 (App.Div.2005) (narrowly construing N.J.S.A. 39:6A-4.5(b) and finding "no basis in the statutory scheme or legislative history to apply Section 4.5's bar to the recovery by drunk drivers of economic and non-economic losses to PIP benefits as well."). Application of that construction avoids a finding of implied repealer.
For these reasons and because the later enactment left unchanged the provisions of the earlier one, effect can be given to each statute in a manner that does not cause them to conflict. See Chasin v. Montclair State Univ., 159 N.J. 418, 438-39, 732 A.2d 457 (1999) (holding that if the later statute and a prior one are not fatally inconsistent they may function together and the earlier one is not impliedly repealed); Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992) (noting that judicial construction of statutes should strive to implement the intent of the Legislature, considering the language of the statutes as well as "the objects sought to be achieved"); 1A Norman *836 J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 22:34 at 395-96 (7th ed.2007) (commenting that effect should be given to each statute and they should be "interpreted so they do not conflict").
Although the "plain" words of N.J.S.A. 39:6A-4.5(b) provide for "no" cause of action, even apparently plain words must be read in context. The words in this section are part of a larger measure intended to reduce automobile insurance rates. "[E]ven apparently plain words, divorced from the context in which they arise and which their creators intended them to function, may not accurately convey the meaning the creators intended to impart." 2A Singer, supra, § 46.5 at 216 (quoting Leach v. FDIC, 860 F.2d 1266, 1270 (5th Cir.1988)), cert. denied, 491 U.S. 905, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989). In our view, a literal reading would be contrary to the meaning intended by the Legislature.
Our conclusion is bolstered by a public policy consideration. Our courts have long recognized the "senseless havoc and destruction caused by intoxicated drivers," State v. Tischio, 107 N.J. 504, 512, 527 A.2d 388 (1987), appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988), and the strong public policy in "the immediate removal of drunk drivers from the highways." In re Kallen, 92 N.J. 14, 28, 455 A.2d 460 (1983). Discouraging drunk driving is surely a purpose of both statutes involved in this case.
Tiffany's argues that by precluding dram shop clams "a firm message will be sent to drivers of motor vehicles in this State, regarding the further increased risks of driving while intoxicated." We rejected a similar argument in Camp, supra, 352 N.J.Super. at 419, 800 A.2d 234, where we stated: "If, as defendants assert, N.J.S.A. 39:6A-4.5(b) was designed to penalize those who endanger highway safety by driving while intoxicated, the Legislature could not have intended to relieve those responsible for the intoxication of the drivers, and particularly those served while below the legal drinking age." The same logic applies here, and even more so. The Legislature could not have thought it could reduce the number of drunk drivers by immunizing liquor establishments from their claims and thus providing a disincentive to the licensees, who possess the expertise and the statutory and regulatory responsibility to avoid serving visibly intoxicated patrons, thus increasing their degree of intoxication before turning them loose on the highways. Accord Mahoney, New Jersey Personal Injury Recovery § 9:2-3 at 279 (Gann 2010) ("Presumably, the court's rationale [in Camp] would also preserve dram shop actions by both intoxicated minors and adults."); Drazin, New Jersey Premises Liability § 12:2-2 at 312 (Gann 2009) ("Presumably, an intoxicated customer injured in a subsequent motor-vehicle accident will not be precluded from maintaining a claim against a licensed server by N.J.S. 39:6A-4.5b.") (citing Camp, supra, 352 N.J.Super. at 418-19, 800 A.2d 234); Craig & Pomeroy, New Jersey Auto Insurance Law § 15:5 at 307 (Gann 2010) (questioning Camp's rationale which "apparently would extend to dram shop actions by drunken drivers").
Affirmed.
NOTES
[1] Plaintiff was also charged with other motor vehicle offenses, which were ultimately dismissed.
[2] Plaintiff entered the guilty plea subject to a "civil reservation," see R. 7:6-2(a)(1), with the effect that the plea could not be used as evidence in a subsequent civil proceeding. The trial court found that the reservation could not preclude application of the statutory bar of N.J.S.A. 39:6A-4.5(b) to a cause of action. Plaintiff does not argue otherwise on appeal. In light of our conclusion that the statutory bar does not apply to plaintiff's dram shop claim, we need not address the potential effect of a civil reservation on the statutory bar.